**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HAU THE TRAN** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO. 14-420-KD-B** |
| **ALLSTATE INSURANCE COMPANY** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's Motion for Partial Summary Judgment (Docs. 44, 46), Plaintiff's reply (Doc. 51), and Defendant's response (Doc. 52). For the reasons discussed herein, Defendant's Motion for Partial Summary Judgment on Counts Two and Four of the Complaint (Doc. 1) is **GRANTED**.

**I.      Factual Background[1]**

On August 18, 2012, the VIP Nail Salon ("the salon"), located in Daphne, Alabama was intentionally set ablaze and sustained damages. (Doc. 51 at 8). Plaintiff Hau the Tran ("Tran") owned the salon. (Doc. 1-1 at 2). At the time of the fire, Tran's Toyota Avalon ("the vehicle") was parked behind the salon. (Doc. 51-2 at 69). The vehicle was also set on fire, resulting in damages. (Doc 1-1 at 2).

Tran had insurance coverage on both the salon and the vehicle through Defendant Allstate Insurance Company ("Allstate"). (Id., Docs. 44-2 and 44-3). After the fires, Tran made insurance claims on the salon and vehicle. (Doc. 51 at 8). The parties do not dispute that Tran was covered under Allstate policies at the time of the losses, the amount of the policies, the terms of the policies, or that Tran made a timely claim under the policies. (Id.).

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v.*

The state fire marshal investigated the fires and concluded that they had been intentionally set. (Docs. 44 at 2 and 51 at 8). Allstate referred Tran's claims to Investigator Wilbur Jordan. Jordan engaged in an investigation which included interviews of Tran, employees of nearby businesses, the employment of private fire investigator Gary Jones, and collection of documentation regarding the salon and vehicle, the fires, and Tran's whereabouts before and during the fires. (Docs. 44-4 and 44-5). During the course of the investigation, Allstate determined that Tran had been having trouble with the business and had recently significantly changed her insurance coverage. (Id.). Additionally, Tran had rooms reserved at the Grand Casino in Biloxi, Mississippi in the days prior to the fires. (Doc. 51-2 at 124). Matches from the Grand Casino were recovered at the scene of the fires. (Id.). Fire investigator Gary Jones determined that gasoline had been used as an accelerant and there were no signs of forced entry at the salon, indicating that the person who set the fires would require access to the salon via keys. (Docs. 51 at 8 and 44-6 at 1-2).

Tran's salon insurance policy stated that Allstate would not cover "[i]ntentional or criminal acts of or at the direction of any persons insured, if the loss that occurs: a) may be reasonably expected to result from such acts; or b) is the intended result of such acts." (Doc. 44-2 at 27). The concealment and fraud section of the policy stated: "This policy is void if you intentionally conceal or misrepresent any material facts or circumstances, before or after loss." (Id. at 70).

Tran's vehicle insurance policy stated, "This policy shall be deemed void from its inception if it was obtained or renewed through material misrepresentation, fraud or concealment of material fact. This means that Allstate will not be liable for any claims or damages which would otherwise be covered had there not been material misrepresentation, fraud, or concealment

of material fact." (Doc. 44-3 at 29).

As a result of its investigation, Allstate concluded that Tran had been involved in setting or causing the fires to be set. (Doc. 51-2 at 86-87). Allstate also determined that Tran had made material misrepresentations during the investigation regarding her whereabouts around the time of the fires, her financial status, and the value and contents lost in the fire. (Doc. 51-2 at 84-92). As a result, Allstate denied Tran's insurance claims on both the salon and the vehicle.[2] Tran denies any involvement with the fires and making any material representations to Allstate.

On August 18, 2014, Tran filed suit in the Circuit Court of Baldwin County Alabama alleging breach of contract, fraudulent suppression, fraud, and bad faith. Allstate removed this action to the U.S. District Court for the Southern District of Alabama on September 10, 2014. Allstate now moves for partial summary judgment on Tran's fraudulent suppression and fraud claim (Count Two) and bad faith claim (Count Four).

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[2] The letter communicating the denial of claims is not in evidence. This information is taken from Allstate Investigator Wilbur Jordan's deposition testimony concerning the denial letter.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. Rule 56(c). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter … the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992).

**III.   Analysis**

**A.      Jurisdiction and Venue**

Tran is a resident citizen of the state of Mississippi. (Doc. 1 at 3). Allstate is a corporation organized under the laws of the state of Illinois and authorized to do business as an insurance company in the state of Alabama. (Id.). The amount in controversy exceeds $75,000. This Court

has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper because the events

giving rise to this action occurred in Daphne, Alabama, within the Southern District of Alabama.

28 U.S.C. § 1391(b)(2) ("A civil action may be brought in—a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of the property that is the subject of the action is situated[.]").

> **B.    Choice of Law**

Before addressing the parties' substantive contentions, the Court must decide what

substantive law governs the claims in this diversity action. "A federal court in a diversity case is

required to apply the laws, including principles of conflict of laws, of the state in which the

federal court sits." *Manuel v. Convergys Corp .,* 430 F.3d 1132, 1139 (11th Cir.2005) (citing

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). Tran asserts several claims

involving insurance policies on both the salon and the vehicle. Both policies contain choice of

law provisions.  The vehicle policy states:

> This policy is issued in accordance with the laws of Mississippi and covers
> property or risks principally located in Mississippi. Subject to the following
> paragraph, any and all claims or disputes in any way related to this policy shall be
> governed by the laws of Mississippi. *If a covered loss to the auto, a covered auto
> accident, or any other occurrence for which coverage applies under this policy
> happens outside Mississippi, claims or disputes regarding that covered loss to the
> auto, covered auto accident, or other covered occurrence may be governed by the
> laws of the jurisdiction in which that covered loss to the auto, covered auto
> accident, or other covered occurrence happened.*

(Doc. 44-3 at 21)(emphasis added). The salon policy states:

> This policy is issued in accordance with the laws of the State of Alabama and
> covers property or risks principally located in the State of Alabama. Subject to the
> following paragraph, the laws of the State of Alabama shall govern any and all
> claims or disputes in any way related to this policy.
>
> If a covered loss to property, or any other accidental event for which coverage
> applies under this policy happens outside the State of Alabama, claims or disputes
> regarding that covered loss to property, or any other covered accidental event may

be governed by the laws of the jurisdiction in which that covered loss to property, or other covered accidental event happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

(Doc. 44-2 at 27-28). In Alabama, the "right of parties to an agreement to choose a particular state's laws to govern an agreement" is well-settled, so long as choice-of-law provisions are not contrary to Alabama law or public policy. *Cherry, Bekaert & Holland v. Brown,* 582 So.2d 502, 506 (Ala. 1991); *Craig v. Bemis Co.,* 517 F.2d 677, 680 (5th Cir. 1975). Nothing in the choice-of-law provisions contained in the policies is contrary to law or public policy. Further, the parties apply Alabama law in their briefing, and neither has argued that the law of any other jurisdiction should apply to Tran's claims. Therefore, the Court will apply Alabama law.

### C.   Allstate's Motion for Partial Summary Judgment

Allstate has moved for partial summary judgment on Counts Two and Four of the complaint. Count Two alleges fraud and suppression and Count Four alleges bad faith. (Doc. 1-1 at 8).

#### 1.   Count Two (fraud and suppression)

Count Two of Tran's complaint alleges:

32.   Defendants have represented to Plaintiff that the [vehicle] and [the salon] were covered by applicable polices of insurance that provided coverage, among other things, for loss caused by fire. Defendants further represented that the claims would be considered timely, fairly, reasonably, and in accordance with the terms of the contracts, applicable policies and procedures, and the customs and practices of Defendants.

33.   Defendants suppressed from the Plaintiff that the contracts did not provide coverage for, among other things, loss caused by fire. Defendants further suppressed that the claims were not and would not be considered timely, fairly, reasonably, and in accordance with the terms of the contracts, applicable policies and procedures, and the customs and practices of Defendants.

(Doc. 1-1 at 8). According to Tran, Jordan told her that Allstate was going to pay her approximately $19,000 for the vehicle claim. (Doc. 53 at 13). However, Allstate did not pay Tran for the damages to the vehicle.

At her deposition, Tran was asked, "You told me about the conversation you had with Mr. Jordan that he was going to pay the $19,000 on the car. I'm not talking about that conversation. Did anyone at Allstate ever tell you anything that wasn't true except for that one conversation?" Tran responded, "[n]obody told me" and "[j]ust only him, only me and him."[3] (Doc. 53 at 47). In her response to Allstate's motion, Tran appears to confine her fraud, suppression, and misrepresentation allegations to the circumstances surrounding Allstate's non-payment of the vehicle claim, not non-payment of the salon claim. (Doc. 51 at 32-33). Because Tran has narrowed it as such, the Court follows suit.

### a.   Fraudulent Misrepresentation/Suppression

Count Two[4] is based on "intertwined theories of misrepresentation and suppression." *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 1343, 1365 (S.D.Ala. 2010). "These claims are essentially complementary, and are therefore properly considered in tandem." *Id*. The Alabama Supreme Court has held:

> A fraudulent-misrepresentation action is governed by § 6–5–101, Ala.Code 1975, which provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." A claim of fraudulent misrepresentation comprises the following elements: "(1) a false representation (2) concerning a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation,* 772 So.2d 455, 463 (Ala.2000) (quoting *Baker v. Bennett,* 603 So.2d 928, 935 (Ala.1992)). "An essential element of fraudulent-misrepresentation and

---

[3] Though an interpreter was present at Tran's deposition, some of Tran's responses are difficult to understand.
[4] The Court is unable to determine whether Tran alleges a fraudulent misrepresentation claim in addition to her fraudulent suppression claim. In an abundance of caution, the Court also addresses a claim for fraudulent misrepresentation.

fraudulent-suppression claims is a duty to disclose." *Nesbitt v. Frederick,* 941
So.2d 950, 955 (Ala.2006).

*Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 656 (Ala. 2014).

Under Alabama law, "[t]he elements of fraudulent suppression are: (1) the defendant had
a duty to disclose an existing material fact; (2) the defendant concealed or suppressed that
material fact; (3) the defendant's suppression induced the plaintiff to act or refrain from acting;
and (4) the plaintiff suffered actual damage as a proximate result." *Alabama Psychiatric Servs.,*
*P.C. v. 412 S. Court St., LLC,* 81 So. 3d 1239, 1247 (Ala. 2011)(internal quotations and citations
omitted). Thus, in order to defeat a motion for summary judgment on either fraudulent
suppression or misrepresentation, Tran must point to some evidence that she relied upon
Allstate's alleged false representations.

Viewing the facts in the light most favorable to Tran, Allstate represented to Tran that she
would be paid on her vehicle policy for the damages to the vehicle sustained as a result of the
fire. (Doc. 51 at 33). With regard to the reliance elements of both causes of action, the following
was elicited during Tran's deposition testimony:

Q: Did Mr. Jordan tell you that Allstate would pay you $19,000 for your car?

Tran: He told me your car should be 19 some (phonetic). Okay. So he – they ask
me like do you still owe the bank. I say yes. So he say he will -- they will, you
know, cancel my car. So they going to send the money to pay off my car, and I
can, you know, get the money, whatever, you know, like the car and -- they pay
off the bank.

Q: My question is did Mr. Jordan tell you that they will pay you $19,000 for your
car after the fire?

Tran: For a couple days later.

Q: A couple of days later after the fire?

Tran: Yes. Yes.

Q: All right. And after he told you that, what did you do?

Tran: I don't -- I don't do nothing. I don't say nothing --

Q: Okay.

Tran: -- because I don't know nothing.

Q: You didn't go out and buy another car or anything like that?

Tran: No, I still have another car.

Q: So even though he told you they were going to pay you $19,000, you didn't do anything based on that statement?

Tran: No.

(Doc. 53 at 15-16). Tran's own testimony specifically negates the reliance element of both a fraudulent suppression and a fraudulent misrepresentation claim, as she denies that she was induced to take any action as a result of Allstate's representations concerning payment for the vehicle. Moreover, Tran has failed to present any evidence of damage, i.e. credit damage.[5] Accordingly, these claims must fail and Allstate's motion for summary judgment as to Tran's fraudulent suppression/misrepresentation claim is **GRANTED**.

### b.    Fraud

When evaluating a fraud claim regarding the non-payment of an insurance claim, the Alabama Supreme Court has held:

> To recover on a fraud claim, the plaintiff must show that the defendant (1) made a misrepresentation (2) concerning a material fact (3) that the plaintiff relied upon, and that (4) the plaintiff suffered damage that proximately resulted from that misrepresentation…Additionally, when the alleged misrepresentation concerns a future act, as this one does, the plaintiff has two additional things to prove: (1)

---

[5] In opposition to Allstate's motion, Tran cited her testimony at pages 15-16 and 38-39 of her deposition. (Doc. 53 at 38-39, and Doc. 51 at 33). The Court has considered this testimony, as well as the rest of the deposition, and concludes that Tran's characterization of her testimony, as argued in Doc. 51 at 33 is inaccurate. Though argued, there is nothing in evidence indicating Tran either fell behind on her payments or that her credit was damaged.

that at the time the misrepresentation was made the offending party intended not to perform the promised act and (2) an intent to deceive.

*Pugh v. S. Life & Health Ins. Co.,* 544 So. 2d 143, 144 (Ala. 1988), *as modified on reh'g* (May 19, 1989)(internal citations omitted)(holding that a plaintiff alleging fraud in connection with refusal to pay an insurance claim constitutes fraud concerning the performance of a future act).

As previously discussed, Plaintiff fails to produce sufficient evidence of reliance or damages. Accordingly, Allstate's motion for summary judgment as to Tran's fraud claim is **GRANTED**.

### 2.     Count Four (bad faith)

Count Four alleges that Allstate acted in bad faith when it refused to pay Tran's claim. Under Alabama law, there is one tort of bad faith refusal to pay a claim, but there are two methods of proof: failure to pay and failure to investigate. The Alabama Supreme Court recently explained:

> [T]here is only *one* tort of bad-faith refusal to pay a claim, not two "types" of bad faith or two separate torts…We have repeatedly held that the tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Bowen,* 417 So.2d at 183. Thus, for the tort of bad-faith refusal to pay, "[r]equirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." *Grissett,* 732 So.2d at 976. But the tort has always been *one.* Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial: "Of course, *if a lawful basis for denial actually exists,* the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *Gulf Atlantic Life Ins. Co. v. Barnes,* 405 So.2d 916, 924 (Ala. 1981) (emphasis added). As we held in *Weaver,* where the "[insurer's] investigation established a legitimate or arguable reason for refusing to pay [the insured]'s claim, [that] is all that is required." 574 So.2d at 774. See also *Bowers v. State Farm Mut. Auto. Ins. Co.,* 460 So.2d 1288, 1290 (Ala.1984) ( "[W]here a

legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie.").

*State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013), *reh'g denied* (Jan. 17, 2014)(emphasis in original). "The plaintiff asserting a bad-faith claim bears a heavy burden." *Shelter Mut. Ins. Co. v. Barton,* 822 So.2d 1149, 1154 (Ala. 2001) (citing *LeFevre v. Westberry,* 590 So.2d 154, 159 (Ala.1991)). A "plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute." *National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982). "The right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as is its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same." *Id.*

"To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable." *Liberty Nat. Life Ins. Co. v. Allen*, 699 So. 2d 138, 143 (Ala. 1997). "A bad-faith-refusal-to-investigate claim cannot survive where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 260 (Ala. 2013), *reh'g denied* (Jan. 17, 2014). "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the [insurance] claim and, thus, the legitimacy of the denial thereof, the [bad faith] tort claim must fail and should not be submitted to the jury." *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

Thus, in order to make a ruling on summary judgment, the Court must determine whether there is sufficient evidence for a jury to find that there is not even a debatable issue of fact as to whether Tran either burned or directed that her business and car be burned. As noted in *Brechbill*, *supra*, the Court must consider what was known to Allstate at the time of its denial of

the claim. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 259 (Ala. 2013), *reh'g denied* (Jan. 17, 2014)(internal citations and quotations omitted).

At the time of the denial of the claims, the following, *inter alia*, had been determined by Allstate's investigation:

1.) The fire was intentionally set and gasoline was employed as an accelerant.

2.) That Ms. Tran had not been present for a period of time prior to the fire. (Doc. 51 at 8).

3.) That neighboring tenants stated that Tran's business appeared to be closed for several weeks before the fire. (Doc. 44-4 at 27-28).

4.) One tenant said that "Ms. Tran had told her that the business was not doing very well and she wanted to relocate to somewhere else." (Id. at 23).

5.) Tran had rooms reserved at the Grand Casino during the week leading up to the fire. (Doc 52-1 at 3). Matches from the Grand Casino were found at the scene of the fire. (Id. at 26 and Doc. 51 at 9).

6.) There was no forced entry at the salon. (Docs. 44-4 at 27 and 51 at 8).

7.) Prior to the fire, Tran increased her insurance coverage from $15,000.000 to $100,000.00, and then decreased it to $75,000.000. (Docs. 44-4 at 7 and 51 at 13)

8.) Tran was a guest at the IP Casino Resort and Spa in Biloxi from August 17-19, 2012. According to the IP's records, Tran's gaming card was inactive between the hours of 9:16 p.m. on August 18, 2012 and 1:29 a.m. on August 19, 2012. [6] The Daphne Fire Department responded to the fires at the salon at approximately 11:21 p.m. on August 18, 2012. (Doc. 44-6 at 2).

---

[6] Tran claims that Allstate did not have the IP (Imperial Palace) records at the time it denied her claims. In support of this allegation, Tran points to the deposition testimony of IP Regulatory Compliance Officer Kelli Watson. At her deposition on March 31, 2015, Watson testified that the IP records were produced pursuant to a subpoena in this case. (Doc. 44-3 at 7). IP's response to the subpoena, including the records, was dated February 23, 2015. (Doc. 44-12 at 1). Watson does not state, nor was she asked if subpoena was the *only* method by which the records were produced to Allstate. On February 16, 2015, several days before the records were produced pursuant to the subpoena, Allstate Investigator Jordan was deposed. He was asked, "During the investigation do you recall obtaining records from the Imperial Palace?" Jordan responded, "We did." He was then asked, "Do you recall those records showing activity on [Tran's] Players Card from August 17th through August 19th?" Jordan responded, "I do." (Doc. 51-2 at 133-134). Thus, it appears that Jordan was privy to the IP records prior to their production. The Court also notes that even without the IP records, an arguable basis for Allstate's denial of the claims, based on the other factors noted above, remains.

Tran responds by arguing that the conclusions reached by Allstate are based on "weak" evidence or that Tran is able to explain away the evidence that implicates her. However, the issue is not whether Tran's version of facts are stronger or credible. The issue is whether the conclusion reached from the known facts is debatable. No reasonable person could say that the conclusion reached by Allstate, that plaintiff directed or participated in the arson, is not a debatable issue of fact.  "Alabama law is clear: ... regardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *State Farm Fire & Cas. Co. v. Brechbill,* 144 So. 3d 248, 259 (Ala. 2013), *reh'g denied* (Jan. 17, 2014)(internal citations and quotations omitted). Accordingly, Allstate's motion for summary judgment as to Count Four (bad faith) is **GRANTED**.

**IV.     Conclusion**

For the reasons discussed herein, Allstate's motion for summary judgment as to Counts Two and Four is **GRANTED**.

**DONE** and **ORDERED** this **23**rd day of **July 2015**.

s / Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE